## S92A0725. LEE v. THE STATE.
(423 SE2d 249)

CLARKE, Chief Justice.

Chien-Chyun Lee was convicted of the felony murder of Jia Yann Chao, and sentenced to life imprisonment.[1] The evidence showed that the defendant, a resident of Texas, flew to Atlanta to convince the victim to stop seeing the defendant's ex-wife. According to the defendant this affair had destroyed his marriage and was now preventing an attempted reconciliation with his former wife. According to the defendant, the victim not only refused to end the affair, but taunted the defendant about his manhood. While in custody, the defendant told police officers that his gun either accidentally discharged or that he fired in self-defense. At trial the defendant testified that he fired twice when the victim grabbed at his gun and lunged at him with a pair of scissors. Police officers found a pair of scissors in the victim's right hand.

The victim was shot twice: once in the chest from a range of 6 to 8 inches, and once in the back of the head from a range of 1 1/2 inches. The defendant flew back to Texas and pawned his .38 pistol the day following the shooting. A firearms examiner testified at trial that he was of the opinion the bullets which killed the victim were fired from the defendant's gun.

1. We conclude that a rational trier of fact could have found the defendant guilty of the crime of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. The victim's wife informed Cobb County police that she suspected the victim had been having an affair with the defendant's ex-wife. Subsequently, a Cobb County police officer flew to Houston, Texas to interview the defendant. The defendant agreed to be interviewed at a Houston police substation, and was advised of his *Miranda* rights prior to questioning.

In the course of his interview the defendant stated that he shot the victim, but that it was either an accident or self-defense. When the interviewing officer asked the defendant how the shooting could have been self-defense since the victim was shot in the back of the head, the defendant stated he wished to talk to a lawyer. The interview terminated, but as the officer prepared to leave the interview room, the defendant asked him whether he should get a lawyer. The

---

[1] The crime occurred on April 26, 1990. The defendant was tried May 6-11, 1991. The jury returned its verdict on May 11, 1991, and the trial court sentenced the defendant that same day. The defendant filed his motion for new trial on June 6, 1991, and amended it on October 8, 1991. The trial court denied the motion for new trial on December 19, 1991. The case was docketed in this court on March 18, 1992, and orally argued on May 12, 1992.

officer responded that he should do what he thought best. The defendant continued to talk, stating that he did not mean to kill the victim, but that the killing was either accidental or in self-defense. The defendant further stated that he was having a "hard time remembering" what happened.

At trial the defendant testified in detail as to the events surrounding the shooting. On cross-examination the district attorney attempted to impeach the defendant by comparing his inability to remember the events surrounding the shooting during his interview with police officers with his elaborate trial testimony. The defendant now argues that the trial court erred in not sustaining his objection to this line of questioning which, he maintains, was in violation of *Doyle v. Ohio*, 426 U. S. 610 (96 SC 2240, 49 LE2d 91) (1976).

*Doyle v. Ohio* holds that after a defendant has received *Miranda* warnings, the state's use of his silence to impeach him violates due process. In this case, however, the defendant was not silent; during his interview with police he stated that he was unable to remember the events surrounding the shooting. At trial, a year later, he was able to remember these events in great detail. The trial court correctly concluded that the state's attempt to impeach the defendant in this circumstance did not violate the principles of *Doyle v. Ohio*. *Williams v. State*, 258 Ga. 281, 284 (368 SE2d 742) (1988).

3. The defendant argues that the trial court erred in refusing to allow an expert in Chinese culture to testify. The defendant made a proffer, outside the presence of the jury, that this expert would have testified to the effects of cultural influences on the Chinese male; family matters among the traditional Chinese; the distinct role between males and females in the Chinese society; and the concept of divorce among traditional Chinese. The defendant maintains that this expert testimony related to matters beyond the ken of the average juror, and would have cast light on his motivations, state of mind and actions.

The trial court sustained the state's objection that this expert testimony was not relevant to the issues at trial. The defendant maintained that he fired the first shot accidentally, while the second shot was fired in self-defense. These were matters the jury was able to resolve; evidence of the effects of Chinese culture on the defendant in firing the shots would not have aided the jury in its search for the truth. The trial court did not err in excluding this evidence. OCGA § 24-2-1.

We note that the defendant was permitted to testify to many aspects of Chinese culture, and therefore the jury had the benefit of much of the evidence the defendant sought to elicit from his expert.

4. The trial court did not abuse its discretion in permitting the state to waive its initial closing argument and present its entire argument at the conclusion of the defendant's closing argument. *Bradham*

*v. State*, 243 Ga. 638 (256 SE2d 331) (1979). Contrary to the defendant's contention, this procedure did not deprive him of knowledge of the state's theory of the case as this was presented throughout the trial.

5. The defendant argues that his conviction must be reversed because the trial court gave the sequential charge which this court disapproved in *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992). In *Edge* we held that the jury should not have been charged that it was authorized to consider the offense of voluntary manslaughter only if it found the defendant not guilty of malice murder and felony murder. A similar charge was given in this case, and the defendant reserved his right to object to the charge on appeal. We held in *Taylor v. State*, 262 Ga. 584 (422 SE2d 430) (1992), that we would apply the rule of *Edge* to all cases either on direct review or not yet final at the time *Edge* was decided where the defendant objected or reserved his right to object to the jury charge. As the defendant's case was pending on appeal at the time *Edge* was decided, he is entitled to benefit from that decision and be given a new trial.

*Judgment reversed. All the Justices concur; Hunstein, J., not participating.*

DECIDED DECEMBER 2, 1992.

*Maloy & Jenkins, James K. Jenkins*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Robert D. McCullers, Staff Attorney*, for appellee.